1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| JOHN I. B.,[1] | Case No. 2:19-cv-02837-JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| ANDREW SAUL,[2] Commissioner of Social Security Administration, | |
| Defendant. | |

17
18

**I.    SUMMARY**

19          On April 12, 2019, plaintiff filed a Complaint seeking review of the

20    Commissioner of Social Security's denial of his application for benefits.  The

21    parties have consented to proceed before the undersigned United States Magistrate

22    Judge.

23    ///

24

25          [1]Plaintiff's name is partially redacted to protect his privacy in compliance with Federal
26    Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
      Administration and Case Management of the Judicial Conference of the United States.

27
28          [2]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Andrew
      Saul is hereby substituted in as the defendant in this action.

This matter is before the Court on the parties' cross motions for summary judgment, respectively "Plaintiff's Motion" and "Defendant's Motion" (collectively, "Motions"). The Court has taken the Motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 30, 2013, plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning on June 2, 2002, due to obesity, diabetes, high cholesterol, asthma, a broken ankle, and depression. (Administrative Record ("AR") 258-59, 290). An ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on November 19, 2015. (AR 60-75). On December 21, 2015, the ALJ determined that plaintiff was not disabled through plaintiff's last insured date of December 31, 2003. (AR 90-95).

On March 13, 2017, the Appeals Council granted review, vacated the ALJ's 2015 decision, and remanded the matter for further administrative proceedings. (AR 101-02). The Appeals Council ordered the ALJ to obtain additional evidence concerning plaintiff's left knee impairment; to further evaluate plaintiff's alleged symptoms; to "give further consideration to [plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations," obtaining additional evidence or explanation from medical sources as needed; and to obtain "supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [plaintiff's] occupational base." (AR 101-02).

1    On November 15, 2017, the ALJ again examined the medical record and

2    also heard testimony from plaintiff (who was again represented by counsel), and a

3    vocational expert.  (AR 34-59).  On May 2, 2018, the ALJ again determined that

4    plaintiff was not disabled through December 31, 2003, the date last insured.  (AR

5    17-28).  Specifically, the ALJ found:  (1) plaintiff suffered from the following

6    severe impairments: asthma, obesity, headache, left knee sprain/strain and

7    tendinitis, left knee popliteal cyst, and left thigh tendinitis (AR 20); (2) plaintiff's

8    impairments, considered individually or in combination, did not meet or medically

9    equal a listed impairment (AR 20); (3) plaintiff retained the residual functional

10   capacity to perform medium work (20 C.F.R. §§ 404.1567(c)) with additional

11   limitations[3] (AR 20-21); (4) plaintiff could not perform any past relevant work

12   (AR 26); (5) there are jobs that exist in significant numbers in the national

13   economy that plaintiff could perform, specifically "hand packager," "stores

14   laborer," and "food service worker" (AR 26-27); and (6) plaintiff's statements

15   regarding the intensity, persistence, and limiting effects of subjective symptoms

16   were not entirely consistent with the medical evidence and other evidence in the

17   record (AR 22).

18        On February 19, 2019, the Appeals Council denied plaintiff's application

19   for review of the ALJ's 2018 decision.  (AR 1-3).

20   **III.    APPLICABLE LEGAL STANDARDS**

21        **A.    Administrative Evaluation of Disability Claims**

22        To qualify for disability benefits, a claimant must show that he is unable "to

23   engage in any substantial gainful activity by reason of any medically determinable

24

25   ───────────────

26   [3]The ALJ determined that plaintiff was limited to:  (i) lifting, carrying, pushing, or pulling
     fifty pounds occasionally and twenty-five pounds frequently; (ii) standing and/or walking for

27   about six hours in au eight-hour workday; (iii) sitting for about six hours in au eight-hour
     workday; (iv) avoiding even moderate exposure to respiratory irritants such as fumes, odors,

28   dusts, aud gases.  (AR 20-21).

1    physical or mental impairment which can be expected to result in death or which

2    has lasted or can be expected to last for a continuous period of not less than 12

3    months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting

4    42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R.

5    §§ 404.1505(a), 416.905.  To be considered disabled, a claimant must have an

6    impairment of such severity that he is incapable of performing work the claimant

7    previously performed ("past relevant work") as well as any other "work which

8    exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

9    1999) (citing 42 U.S.C. § 423(d)).

10        To assess whether a claimant is disabled, an ALJ is required to use the five-

11   step sequential evaluation process set forth in Social Security regulations.  See

12   Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)

13   (describing five-step sequential evaluation process) (citing 20 C.F.R.

14   §§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through

15   four – i.e., determination of whether the claimant was engaging in substantial

16   gainful activity (step 1), has a sufficiently severe impairment (step 2), has an

17   impairment or combination of impairments that meets or medically equals one of

18   the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings")

19   (step 3), and retains the residual functional capacity to perform past relevant work

20   (step 4).  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

21   The Commissioner has the burden of proof at step five – i.e., establishing that the

22   claimant could perform other work in the national economy.  Id.

23        **B.    Federal Court Review of Social Security Disability Decisions**

24        A federal court may set aside a denial of benefits only when the

25   Commissioner's "final decision" was "based on legal error or not supported by

26   substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

27   F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The

28   standard of review in disability cases is "highly deferential."  Rounds v. Comm'r

4

1  of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation
2  marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could
3  reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at
4  674-75 (citations omitted).  Even when an ALJ's decision contains error, it must
5  be affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec.
6  Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if
7  (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path
8  may reasonably be discerned despite the error) (citation and quotation marks
9  omitted).

10      Substantial evidence is "such relevant evidence as a reasonable mind might
11  accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining
12  "substantial evidence" as "more than a mere scintilla, but less than a
13  preponderance") (citation and quotation marks omitted).  When determining
14  whether substantial evidence supports an ALJ's finding, a court "must consider the
15  entire record as a whole, weighing both the evidence that supports and the
16  evidence that detracts from the Commissioner's conclusion[.]"  Garrison v.
17  Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

18      Federal courts review only the reasoning the ALJ provided, and may not
19  affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."
20  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need
21  not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's
22  reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,
23  806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

24      A reviewing court may not conclude that an error was harmless based on
25  independent findings gleaned from the administrative record.  Brown-Hunter, 806
26  F.3d at 492 (citations omitted).  When a reviewing court cannot confidently
27  conclude that an error was harmless, a remand for additional investigation or
28  ///

1  explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173

2  (9th Cir. 2015) (citations omitted).

3  **IV.    DISCUSSION**

4       Plaintiff's sole contention is that the ALJ erred by failing to provide clear,

5  specific, and convincing reasons to discredit Plaintiff's statements and testimony.

6  (Plaintiff's Motion at 6-10).  Defendant contends that the ALJ provided valid and

7  sufficient reasons to determine that plaintiff's allegations of extreme and disabling

8  symptoms were inconsistent with the overall record, including the mild medical

9  findings and plaintiff's limited and conservative treatment.  (Defendant's Motion

10  at 3-8).  For the reasons stated below, the Court concludes that a reversal or

11  remand is not warranted.

12       **A.    Pertinent Law**

13       When determining disability, an ALJ is required to consider a claimant's

14  impairment-related pain and other subjective symptoms at each step of the

15  sequential evaluation process.  20 C.F.R. §§ 404.1529(a), (d).  Accordingly, when

16  a claimant presents "objective medical evidence of an underlying impairment

17  which might reasonably produce the pain or other symptoms [the claimant]

18  alleged," the ALJ is required to determine the extent to which the claimant's

19  statements regarding the intensity, persistence, and limiting effects of his or her

20  subjective symptoms ("subjective statements" or "subjective complaints") are

21  consistent with the record evidence as a whole and, consequently, whether any of

22  the individual's symptom-related functional limitations and restrictions are likely

23  to reduce the claimant's capacity to perform work-related activities.  20 C.F.R.

24  §§ 404.1529(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304,

25  ///

26  ///

27  ///

28  ///

1   at *4-*10.[4]  When an individual's subjective statements are inconsistent with other

2   evidence in the record, an ALJ may give less weight to such statements and, in

3   turn, find that the individual's symptoms are less likely to reduce the claimant's

4   capacity to perform work-related activities.  See SSR 16-3p, 2017 WL 5180304, at

5   *8.  In such cases, when there is no affirmative finding of malingering, an ALJ

6   may "reject" or give less weight to the individual's subjective statements "only by

7   providing specific, clear, and convincing reasons for doing so."  Brown-Hunter,

8   806 F.3d at 488-89.[5]  This requirement is very difficult to satisfy.  See Trevizo,

9   871 F.3d at 678 ("The clear and convincing standard is the most demanding

10  required in Social Security cases.") (citation and quotation marks omitted).

11      An ALJ's decision "must contain specific reasons" supported by substantial

12  evidence in the record for giving less weight to a claimant's statements.  SSR 16-

13  ────────────────────

14      [4]Social Security Rulings reflect the Social Security Administration's ("SSA") official
    interpretation of pertinent statutes, regulations, and policies.  20 C.F.R. § 402.35(b)(1).  Although

15  they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of
    the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social

16  Security Act and regulations."  20 C.F.R. § 402.35(b)(1); Bray v. Comm'r of Soc. Sec. Admin.,
    554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler v.

17  Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security

18  rulings).  Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the
    term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective

19  symptom evaluation is not an examination of an individual's [overall character or truthfulness]
     . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See

20  SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.  The SSA subsequently republished SSR
    16-3p making no change to the substantive policy interpretation regarding evaluation of a

21  claimant's subjective complaints, but clarifying that the SSA would apply SSR 16-3p only
    "[when making] determinations and decisions on or after March 28, 2016[,]" and that federal

22  courts should apply "the rules [regarding subjective symptom evaluation] that were in effect at

23  the time" an ALJ's decision being reviewed became final.  SSR 16-3p, 2017 WL 5180304, at *1,
    *13 n.27.

24

25      [5]It appears to this Court, based upon its research of the origins of the requirement that

26  there be "specific, clear and convincing" reasons to reject or give less weight to an individual's
    subjective statements absent an affirmative finding of malingering, that such standard of proof

27  remains applicable even when SSR 16-3p governs.  See Trevizo, 871 F.3d at 678-79 & n.5
    (citations omitted).

28

1   3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective

2   statement being rejected and the particular evidence in the record which

3   purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation

4   omitted).  Unless there is affirmative evidence of malingering, the Commissioner's

5   reasons for rejecting a claimant's testimony must be "clear and convincing."

6   Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks

7   omitted), as amended (Apr. 9, 1996).  "General findings are insufficient[.]"

8   Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

9          If an ALJ's evaluation of a claimant's statements is reasonable and is

10  supported by substantial evidence, it is not the court's role to second-guess it.  See

11  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  When

12  an ALJ fails properly to discuss a claimant's subjective complaints, however, the

13  error may not be considered harmless "unless [the Court] can confidently conclude

14  that no reasonable ALJ, when fully crediting the testimony, could have reached a

15  different disability determination."  Stout, 454 F.3d at 1056; see also Brown-

16  Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting

17  claimant testimony "will usually not be harmless").

18         **B.    Plaintiff's Statements and Testimony**

19         On January 27, 2014, plaintiff completed a function report, asserting the

20  following:  He was unable to work because he could not "walk or stand for a long

21  time" and was at "risk of falling."  (AR 319).  He lived at home with his wife, and

22  his activities included watching television, using the computer, talking on the

23  phone, reading, and "tr[ying] to walk and stand."  (AR 319).  He did not prepare

24  meals because it was difficult to stand and "too hard to carry things and walk with

25  them for [a] long time."  (AR 321).  Other than sitting and folding towels, he did

26  not do chores in the house or yard because it was "hard" and he "might fall."  (AR

27  321-22).  He could drive a car, but "not long," and did not shop.  (AR 322).  He

28  ///

8

1  could lift only five pounds, and could walk only fifteen feet before needing to rest
2  for about twenty minutes.  (AR 324).

3      Plaintiff testified about his activities and limitations at the hearings on
4  November 19, 2015, and November 15, 2017.  (See AR 37-52 (2015 hearing
5  testimony); AR 63-72 (2017 hearing testimony)).   Plaintiff stated the following:
6  He last worked full-time in 2002 as a delivery and forklift driver for a printing
7  company, which ended when he fell in the warehouse, injuring his left knee and
8  leg.[6]  (AR 39, 42, 65).  After his injury, in 2002, he continued working for about
9  three or four hours a day, on "modified duty."  (AR 44).  During that time, he
10 could not lift more than five pounds or "do any distance walking," but "sitting was
11 sort of okay" for the most part.  (AR 44).  He sat for about one and a half or two
12 hours of the time at work, but not continually.  (AR 48).  When he came home, he
13 would lie down on the couch for most of the rest of the day, only getting up to use
14 the bathroom.  (AR 45-47).  He was able to shower with the help of a chair.  (AR
15 46-47).

16     Plaintiff also testified:  To get around now, he depends on a walker, which
17 his doctor prescribed around 2012, after he broke his ankle on the stairs.  (AR 38-
18 39, 64-68, 71).   He can walk for about "25 steps max," and can stand for less than
19 twenty minutes, no more.  (AR 38, 64).  Plaintiff testified in 2015 that he can sit
20 for about a half hour.  (AR 64).  In 2017, he said he can sit for "[m]aybe 15 to 20
21 minutes and then [has] to stand up because [his] waist down gets numb and [his]
22 feet fall asleep."  (AR 38).  Plaintiff stated that he spends "about 22 hours" a day
23 sitting down, watching television in his living room.  (AR 68).

24     Plaintiff further testified:  He does not help with laundry, cooking, or
25 grocery shopping.  (AR 38, 64).  He helps clean the house, but cannot stand for
26 long to do it.  (AR 38, 64).  His wife sometimes helps him bathe, but he can

27 _____

28      [6]The injury apparently occurred on March 19, 2002.  (See AR 601).

9

1    manage it on his own "[e]very once in a great while."  (AR 69).  He needs to lie
2    down to dress himself.  (AR 69).  He can drive himself, and leaves the house about
3    once a week to visit friends.  (AR 37, 63, 70).

4    **C.    Analysis**

5    　　The ALJ found that plaintiff's "medically determinable impairments could
6    reasonably be expected to cause the alleged symptoms," but determined that
7    plaintiff's "statements concerning the intensity, persistence and limiting effects of
8    these symptoms" were "not entirely consistent with the medical evidence and
9    other evidence for the reasons explained in th[e] decision."  (AR 22).  Plaintiff
10   suggests that the ALJ's reasons for discrediting his testimony were not sufficiently
11   specific and legitimate because the ALJ did not "pinpoint the specific testimony
12   with specific reasons," and instead merely "recit[ed] the medical evidence in
13   support of his residual functional capacity determination," (Plaintiff's Motion at
14   8).  The Court disagrees.

15   　　The ALJ discounted plaintiff's testimony based on the objective medical
16   evidence and plaintiff's conservative treatment, which the ALJ explained as
17   follows:

18   　　　The medical record does not demonstrate evidence of symptoms,
19   　　　objective medical abnormalities, diagnoses, or treatment consistent
20   　　　with the severity of symptoms as alleged by [plaintiff]. The medical
21   　　　record from the relevant period prior to [plaintiff's] date last insured
22   　　　demonstrates minimal evidence of significant objective medical
23   　　　findings, as demonstrated by diagnostic imaging studies.  Moreover,
24   　　　treatment recommendations were conservative, involving mostly
25   　　　routine medication management and physical therapy.  It has been
26   　　　indicated by examining and treating physicians that [plaintiff's]
27   　　　subjective symptoms were inconsistent with objective medical
28   　　　findings.  An orthopedic evaluation conducted as part of [plaintiff's]

1        workers' compensation matter indicated greater functional

2        limitations, but it appears that the assessed functional limitations were

3        based primarily on [plaintiff's] subjective reports, as there were no

4        new significant objective medical abnormalities demonstrated by

5        diagnostic imaging studies, and treatment recommendations remained

6        generally unchanged involving conservative modalities.

7  (AR 22).  The ALJ then went on to discuss plaintiff's medical records in greater

8  detail, highlighting the mild examination findings and conservative treatments.

9  (See AR 22-23).  Substantial evidence supports the ALJ's findings, which

10 constitute specific and legitimate grounds to discount plaintiff's testimony.

11      First, the ALJ properly determined that plaintiff's testimony about the

12 intensity, persistence and limiting effects of his symptoms was not supported by

13 the conservative nature of his treatment.  See Parra v. Astrue, 481 F.3d 742, 750-

14 51 (9th Cir. 2007) ("The ALJ also noted that [the claimant's] physical ailments

15 were treated with over-the-counter pain medication.  We have previously indicated

16 that evidence of 'conservative treatment' is sufficient to discount a claimant's

17 testimony regarding severity of an impairment.") (citation omitted), cert. denied,

18 552 U.S. 1141 (2008); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (an

19 ALJ may properly rely on the fact that prescribed conservative treatment suggests

20 a lower level of both pain and functional limitation).  As the ALJ observed,

21 plaintiff's treatment mainly involved physical therapy and "routine medication

22 management."  (AR 22).  These were first prescribed at the time of plaintiff's

23 injury in March 2002 and continued through the relevant period.  (See AR 573-74,

24 598, 602, 622).  Plaintiff's medication treatment appears to have consisted mainly

25 of ibuprofen, along with Zantac (ranitidine) and Soma (carisprodol).  (AR 598,

26 602, 622).  As the ALJ noted, plaintiff underwent an initial comprehensive general

27 surgical consultation on October 15, 2002, but "no surgical intervention was

28 indicated and treatment recommendations remained conservative during this

1  period." (AR 22, 599-606).  On an orthopedic evaluation dated March 27, 2003,

2  plaintiff's treating physician determined that plaintiff's ongoing treatment "should

3  consist of conservative care, including orthopaedic follow-up, the taking of

4  symptomatic medication, and physical therapy." (AR 576).

5         Second, the record supports the ALJ's finding that plaintiff's testimony

6  about the intensity, persistence and limiting effects of his symptoms was not

7  supported by the objective medical evidence.  Notably, the relevant period at issue

8  is solely between June 2, 2002, the alleged onset date, and December 31, 2003, the

9  last insured date.  (See AR 19-28).  The main conditions allegedly preventing

10  plaintiff from working full-time during that period were his ongoing obesity and

11  knee and leg injuries sustained when he fell in the warehouse on March 19, 2002.

12  (AR 39, 42, 65, 573).  On the day of the injury, an examination showed "full range

13  of motion, with pain on resisted motion," and he was diagnosed with left knee

14  contusion/strain.  (AR 22, 573).  An examination two days later showed "mild

15  tenderness over the left knee, with mild discomfort on range of motion." (AR 22,

16  573).  As the ALJ pointed out, a progress report on April 15, 2002 indicated that

17  plaintiff's "[e]xamination reveal[ed] subjective complaint outweigh objective

18  findings." (AR 22, 574).  On March 27, 2003, plaintiff's left knee and thigh had

19  mild swelling and pain to palpation, with limited range of motion in the knee, and

20  he was diagnosed with left knee sprain/strain, tendinitis in the left knee and thigh,

21  and a 4 cm popliteal cyst on the left knee.  (AR 23, 573, 575).  At an initial

22  orthopedic examination on April 15, 2002, the examination showed an antalgic

23  gait to the left, tenderness to palpation over the medial joint line, and decreased

24  range of motion, but X-rays were within normal limits.  (AR 22, 574).  As the ALJ

25  observed, there do not appear to have been any significant changes in objective

26  findings for the remainder of the relevant period.  (AR 23; see AR 573-75).  The

27  ALJ reasonably determined that these findings are inconsistent with plaintiff's

28  allegations of debilitating pain and functional limitations, including that he could

1  not lift over five pounds, was limited to sitting down for most of the three or four

2  hours he could spend at work, and needed to spend the rest of the day lying down,

3  only getting up to use the bathroom.  (See AR 44-48).

4      While plaintiff correctly points out that a lack of objective medical evidence

5  is not enough, by itself, to discount his testimony (see Plaintiff's Motion at 8), it is

6  nonetheless a relevant factor.  See Burch v. Barnhart, 400 F.3d at 681 ("Although

7  lack of medical evidence cannot form the sole basis for discounting pain

8  testimony, it is a factor that the ALJ can consider in his credibility analysis.");

9  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain

10  testimony cannot be rejected on the sole ground that it is not fully corroborated by

11  objective medical evidence, the medical evidence is still a relevant factor in

12  determining the severity of the claimant's pain and its disabling effects."); SSR

13  16-3p, *5 ("objective medical evidence is a useful indicator to help make

14  reasonable conclusions about the intensity and persistence of symptoms, including

15  the effects those symptoms may have on the ability to perform work-related

16  activities").  In sum, plaintiff's conservative treatment and mild or moderate

17  objective medical findings, considered together, constitute specific and legitimate

18  reasons to discount plaintiff's allegations.  Moreover, these findings are supported

19  by substantial evidence in the record.  Accordingly, plaintiff has failed to identify

20  any material error in the ALJ's decision.

21  **V.    CONCLUSION**

22      For the foregoing reasons, the decision of the Commissioner of Social

23  Security is AFFIRMED.

24      LET JUDGMENT BE ENTERED ACCORDINGLY.

25  DATED:  May 14, 2020

26  _____
                                    /s/

27                                  Honorable Jacqueline Chooljian

28                                  UNITED STATES MAGISTRATE JUDGE

13